THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. WILLIAM J. THISTLETHWAITE and Others, Appellants.

Fourth Department, November 17, 1909.

Real property — forest preserve — deed to State containing restrictive covenant as to other lands of grantor — cutting timber for commercial purposes — injunction.

Where the owner of forest lands conveyed a portion thereof to the State and covenanted that no portion of the lands retained by him "shall be used or sold for commercial-agricultural, manufacturing or other purposes * * *; but the same shall by the parties of the first part, their heirs and assigns be used, * * * exclusively for permanent forestry, hotel, camp and cottage purposes," and that all deeds thereof given by the grantor shall contain such restrictive covenant, the word "commercial" does not apply solely to agricultural uses, but to manufacturing or other commercial use as well.

Hence, where the owner conveys a portion of the remaining lands subject to such restrictive covenant, the grantee will be enjoined, in a suit by the State, from allowing third persons to cut timber on the land to be used in the manufacture of wood pulp.

The cutting of timber to manufacture wood pulp is commercial and within the prohibition of the covenant; it is not an act in furtherance of permanent forestry, although the licensee is not authorized to cut hard woods.

An agreement by the Attorney-General allowing such licensee to cut soft timber on the tract, in consideration of a relinquishment of a contract right to cut hard timber, does not estop the State from enforcing the restrictive covenant in an action in which no damages are claimed.

APPEAL by the defendants, William J. Thistlethwaite and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Herkimer on the 21st day of April, 1908, upon the report of a referee.

*Charles E. Snyder*, for the appellants.

*John K. Ward*, for the respondent.

Judgment affirmed, with costs, on opinion of MERWIN, Referee.

All concurred.

The following is the opinion of the referee:

MERWIN, Referee:

On January 16, 1896, William Seward Webb and the Ne-ha-sa-ne Park Association conveyed to the People of the State of New York about 75,000 acres of land within the limits of the forest preserve. A portion of this amount, consisting of five parcels, aggregating 15,289 acres, was located in township 8 of John Brown's tract. The grantors owned other lands in township 8, and in the deed it was, among other things, covenanted by the grantors that none of the remaining lands in township 8, belonging to the grantors or either of them which had not been theretofore contracted by them to be sold, "shall be used or sold for commercial-agricultural, manufacturing or other purposes, except as mentioned in said Thompson contracts, but the same shall by the parties of the first part, their heirs and assigns be used and sold exclusively for permanent forestry, hotel, camp and cottage purposes," and that all deeds given by either of them should contain a clause "binding the purchaser thereof, his heirs and assigns to a perpetual use of said lands for permanent forestry, hotel, camp and cottage purposes."

From the remaining lands above referred to, which had not been contracted to be sold, Webb on December 10, 1902, conveyed to the defendant Thistlethwaite certain specified lots, on Fourth lake of the Fulton chain of lakes, as allotted and surveyed by David C. Wood, surveyor, the map of the allotment and survey being dated August 30, 1893, and filed in the office of the clerk of Herkimer county on August 30, 1893. A portion of those lots constitute the parcel of about 125 acres described in the complaint. This deed was in substance made subject to the restrictive covenant in the deed to the People, and contained a covenant by the grantee that the land conveyed should not be used or sold "for commercial-agriculture or manufacturing purposes, but shall be used and sold exclusively for permanent forestry, hotel, camp or cottage purposes."

On the 6th of March, 1905, Thistlethwaite made an agreement in writing with the defendant Hinckley Fibre Company, by which, among other things, he sold to that company "the softwood timber suitable for lumber or manufacturing purposes above four (4) inches in diameter, two feet from the ground, and also all the hardwood timber above (10) ten inches in diameter, two feet from the ground," upon certain lots, being the lots comprised in the parcel of 125 acres.

About June 1, 1905, the Hinckley Fibre Company commenced to cut the timber, and continued to about June twenty-seventh, when they stopped at the instance of the Attorney-General of the State. In the following September, after an interview with the Attorney-General, in which he told them that if they would leave the hard wood they could go on with the cutting, they continued the cutting and drawing of the soft wood until the spring of 1906. The hard wood was not cut, the contract as to that effect being surrendered on November 24, 1906. About January 1, 1907, the work was resumed and continued as to the soft wood until the commencement of this action on March 19, 1907.

Upon the part of the plaintiff it is, in effect, claimed that under the restrictive covenants above referred to, the sale to the Hinckley Company was not permissible, and that, therefore, its accomplishment should be restrained.

Upon the part of the defendants it is claimed that the covenants have not been violated, and that the sale to the Hinckley Company was permissible by way of preparation of the tract for use and sale for hotel, camp and cottage purposes.

The sale to the plaintiff was negotiated by the Forest Commission apparently under the authority of chapter 561 of the Laws of 1895. Upon its purchase, the land became a part of the forest preserve and subject to the constitutional provision* that the lands of the State constituting the preserve should be forever kept as wild forest lands.

The lands remaining to the grantors in township 8, after giving the deed of January 16, 1896, consisted largely of lands surrounding or near to several lakes, some of them of considerable size, and upon such lands, as indicated by the map or allotment filed August 30, 1893, lots were laid out which, upon Fourth lake of the Fulton chain, had a frontage on the lake of about 200 feet, and ran back to include an area of five to ten acres in a lot. The lots upon the lands abutting upon the other lakes were of similar character. Each of the five parcels conveyed to the State abutted more or less upon these lots, or was near to them.

The policy of the State was to have a preserve of wild forest lands. The restrictive covenants did not go so far, but imposed

---

* See Const. art. 7, § 7. — [Rep.

limitations upon what would otherwise be the ordinary use as then understood.

By the law as it then existed, the Forest Commission was charged with the duty of protecting the forests in the forest preserve. It had charge of the public interests of the State with regard to forestry and tree planting, and especially with reference to forest fires, and was charged with certain duties in the promotion of an interest in behalf of forestry in the schools of the State. (Laws of 1895, chap. 395, § 271.*) It may, I think, be assumed that the Forest Commission in the discharge of its duty to the interests of the State obtained the covenant in question. It is somewhat peculiar in form. It first provides as to what shall not be done and then provides as to what shall exclusively be done. Effect must be given, if possible, to both of these provisions.

Upon the part of the defendants it is in effect claimed that the term "commercial" applies only to the term "agricultural." That would lead to the conclusion that aside from the Thompson contracts which expired some years ago, there could be no use or sale of the lands. Clearly this was not the intent of the parties.

Having in view the situation of the parties and the lands sold to the plaintiff, as well as those in regard to which the covenants were made, and the purpose or object sought to be accomplished, and in order to give substantial effect to all the language used, the term "commercial" should be construed to apply not only to agricultural, but also to "manufacturing or other purposes." This would operate to exclude all commercial uses or sales, and that, I think, was the intention of the parties.

The sale to the Hinckley Company was of the soft wood timber suitable for lumber or manufacturing purposes above four inches in diameter, and all the hard wood timber above ten inches in diameter, with right to enter and cut such roads as should be necessary to carry on proper lumbering operations. The company proceeded to the cutting of all merchantable soft wood in the ordinary way of lumbering. Upon sixty-four acres lumbered over on the east side of Eagle creek it appears that about two miles of road were cut. The tops of the trees cut and the brush were left on the ground.

---

* See Fisheries, Game and Forest Law (Laws of 1892, chap. 488), § 271, as amd. and added by Laws of 1895, chap. 395.— [REP.

The agreement of sale to the Hinckley Company authorized the ordinary lumbering operation. The product was pulp wood as understood by all parties and was obtained for the purpose of being manufactured into pulp. The transaction was a commercial one. The cutting was not, according to the evidence, proper for permanent forestry. The contract was, I think, within the prohibition of the covenant, unless, as claimed by the defendants, it can be deemed to have been proper by way of preparation for use and sale for hotel, camp and cottage purposes.

Soon after the purchase by Thistlethwaite he took steps toward the making of a new allotment, and had this in contemplation at the time of the sale to the Hinckley Fibre Company. Surveys were made for that purpose in February and May, 1906, and a new allotment or map completed in June, 1906, and several lots were thereafter and before the commencement of this action sold from that allotment.

The negative covenant in the deed to the plaintiffs was operative on all the remaining lands of the grantors. It, therefore, covered the lands included in the allotment then existing, and so included the lots conveyed to Thistlethwaite, a portion of which constitute the tract in controversy. The fact of an allotment did not abrogate the covenant. All of the lands conveyed to Thistlethwaite were within the original allotment, and still the deed to him expressly continued the covenants upon the lands conveyed.

Can it properly be said that in the preparation of lots for sale the negative covenant can be disregarded? Such a preparation may be convenient, but it is not shown to be a matter of necessity.

A great many trees are left upon the premises, enough it may be to constitute a forest. That, however, is not the question here, but it is whether, in the exercise of the right to use and sell the lands for camp and cottage purposes, the grantee has the right to use and sell the lands for a purpose expressly forbidden.

The fact that the Hinckley Company have surrendered the right to cut the hard wood does not, I think, relieve the situation. Thirty to thirty-five per cent of the wood on the tract was soft wood. It was certainly a material element.

But it is said that the Attorney-General of the State gave the defendants the right to cut the soft wood, and, therefore, the plain-

tiff has no standing now for relief. I am cited to no authority which gives the Attorney-General the power to abrogate or discharge the covenant in question. Nor do I see any basis for an estoppel. No damages are claimed against the defendants. They are not placed in any worse position than they were prior to the act of the Attorney-General.

What meaning is to be given generally to the term "permanent forestry" is not necessary to here determine. The question here is whether the agreement and sale in question is authorized, notwithstanding the negative covenant. It can hardly be assumed that the parties, after providing the negative covenant, would immediately in effect provide that it might be disregarded or nullified.

I am, therefore, of the opinion that the use and sale in question is within the prohibition of the negative covenant; that the affirmative covenant should not be construed to nullify or override the negative covenant, and, therefore, does not justify the said use and sale; that such use and sale cannot be justified upon the theory that they are allowable by way of preparation for sale for camp and cottage purposes; that the plaintiff is entitled to an injunction restraining any further cutting under the said agreement or sale.